UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

PHILIP KIRK,

    Plaintiff,

v.

JACK YOUNG, ROBERT NOVICK, and
KIRBY SHEET METAL WORKS, INC., an
Illinois Corporation,

    Defendants.

No. 14 C 7216
Judge James B. Zagel

## MEMORANDUM AND OPINION

Plaintiff Philip Kirk ("Plaintiff") has brought this action against Defendants Jack Young, Robert Novick, and Kirby Sheet Metal Works, Inc. ("Defendants"), alleging breach of contract (Count I) and seeking declaratory judgment (Count II) and specific performance (Count III). Defendants answered Plaintiff's Complaint and filed a counterclaim alleging breach of contract by Plaintiff. Plaintiff and Defendants have filed cross motions for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the following reasons, partial summary judgment is granted in favor of Plaintiff.

## I. STATEMENT OF FACTS

In 1996, Philip Kirk, Jack Young, Robert Novick, and Richard Ralph, shareholders of Kirby Sheet Metal Works, Inc. ("Corporation"), entered into a Shareholder Agreement ("Agreement"). At this time, Kirk, Young, and Novick were the Corporation's officers and directors. On March 1, 2000, Plaintiff received a letter from Ralph wherein he stated his intention to resign from the Corporation on June 1, 2000. Ralph provided more than sixty (60) days' notice of his intention to resign. Plaintiff and Defendants purchased Ralph's shares approximately ninety (90) days after his notice, on June 1, 2000. Thereafter, Ralph was permitted to hold office in the Chicagoland Sheet Metal Contractor's

1

Association pursuant to a Consulting Agreement, *See* Ex. 1.C, and Kirk, Young, and Novick each owned one-third (1/3) of the Corporation's shares.

On or around March 1, 2013, Plaintiff sent and Defendants received Kirk's letter of resignation, effective August 30, 2013, from his position as Vice President, Member of the Board of Directors, and employee of Kirby Sheet Metal Works, Inc. One hundred eighty (180) days after March 1, 2013 was August 28, 2013. Young and Novick did not suggest to Plaintiff that there was a problem or defect with Plaintiff's notice of resignation. Plaintiff did not learn that Young, Novick, and the Corporation were claiming a defect with his written notice of retirement until on or around November 15, 2013, through a letter from Defendants' attorney that Defendants had no obligation to purchase Plaintiff's shares pursuant to the terms of the Agreement because Plaintiff's notice was defective.

## II. LEGAL STANDARD

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of triable fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of Attica, Ind.*, 259 F.3d 619, 625 (7th Cir. 2001). The Court's "function is not to weigh the evidence but merely to determine if there is a genuine issue for trial." *Bennett v. Roberts*, 295 F.3d 687, 694 (7th Cir. 2002).

Once the moving party has set forth the basis for summary judgment, the burden then shifts to the nonmoving party who must go beyond mere allegations and offer specific facts demonstrating that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). The nonmoving party must offer more than "[c]onclusory allegations, unsupported by specific facts" in order to establish a genuine issue of material fact. *Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003) (citing *Lujan v. Nat'l Wildfire Fed'n*, 497 U.S. 871, 888 (1990)). A

2

party will be successful in opposing summary judgment only if it presents "definite, competent evidence to rebut the motion." *EEOC v. Sears, Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir. 2000). I consider the record in the light most favorable to the nonmoving party, and draw all reasonable inferences in the nonmoving party's favor. *Lesch v. Crown Cork & Seal Co.*, 282 F.3d 467, 471 (7th Cir. 2002).

## III. DISCUSSION

There are no material facts in dispute in this case; rather, the central issue before the court is one of contract interpretation: what notice was required under 4.01 of the Agreement. Parties offer differing interpretations of how many days' notice was required under the "sixty (60) days written notice" provision of the Agreement. Specifically, Plaintiff argues that the notice required under the Agreement was *at least* sixty days, while Defendants maintain that the Agreement required *exactly* sixty days. Based on the grounds that Plaintiff allegedly provided defective notice by providing more than sixty days' notice, Defendants Young, Novick, and the Corporation refused to repurchase Plaintiff's shares in the Corporation. Plaintiff alleges that he provided Defendants adequate notice pursuant to the Agreement, but that Defendant breached the Agreement by (1) refusing to provide the personal guarantee to secure payment of the Corporation's purchase of Kirk's shares and (2) failing to purchase Kirk's shares for $463,329.00 within 180 days from the date it received the notice.

Under Illinois law, the Court's "primary objective in construing a contract is to give effect to the intent of the parties." *Pamado, Inc. v. Hedinger Brands, LLC*, 785 F. Supp. 2d 698, 706 (N.D. Ill. 2011)(citing *Gallagher v. Lenart,* 226 Ill.2d 208, 314 Ill.Dec. 133, 874 N.E.2d 43, 58 (2007)). "A court must initially look to the language of a contract alone, as the language, given its plain and ordinary meaning, is the best indication of the parties' intent." *Id.* Moreover, "because words derive their meaning from the context in which they are used, a contract must be construed as a whole, viewing each part in light of the others." *Id.* "The intent of the parties is not to be gathered from detached portions of a contract or from any clause or provision standing by itself." *Id.*

Here, the Agreement, in relevant part, provides:

4. Option Upon Termination of Employment

> 4.01 If a Shareholder intends to retire from employment by the Corporation, he shall give sixty (60) days written notice to the Corporation and the remaining Shareholders of his intention to so retire. Within one eighty sixty (180) [sic] days of the date of the remaining Shareholders receipt of the notice the remaining Shareholders may exercise an option to purchase, pro rata, all of the shares of the retiring Shareholder. If the remaining Shareholders do not purchase all of the shares of the retiring Shareholder within the time period specified herein, the Corporation shall purchase all of the shares of the retiring Shareholder within one hundred eighty (180) days of the receipt of the notice.

Here, parties dispute the meaning of the words "shall give sixty (60) days" and offer two different interpretations. Under Illinois law, a court must determine as a matter of law whether an ambiguity exists in the contract. *Dunkin' Donuts, Inc. v. Towns Family, Inc.*, No. 95 C 3666, 1995 WL 591454, at *2 (N.D. Ill. Oct. 4, 1995)(citing *Quake Construction, Inc. v. American Airlines, Inc.,* 565 N.E.2d 990, 994 (Ill.1990)); *Metalex Corp. v. Uniden Corp.,* 863 F.2d 1331, 1333 (7th Cir.1988). An ambiguity is not created simply because the parties do not agree upon an interpretation, *Brooklyn Bagel Boys, Inc. v. Earthgrains Refrigerated Dough Products, Inc.,* 212 F.3d 373, 377 n. 2 (7th Cir.2000), but if, and only if, the language of the contract is reasonably and fairly susceptible to more than one meaning. *Gallagher*, 226 Ill.2d at 233; *Baker v. America's Mortgage Servicing, Inc.,* 58 F.3d 321, 326 (7th Cir.1995)). If an ambiguity is found, extrinsic evidence is admissible to ascertain the parties' intent. *PPM Finance., Inc. v. Norandal USA, Inc.*, 392 F.3d 889, 894 (7th Cir. 2004); *Dunkin' Donuts, Inc.*, 1995 WL 591454, at *2. If, however, the agreement's language is clear and unambiguous, a court must ascertain the parties' intentions exclusively from the contract's language—not one party's particular interpretation of its terms at the time of execution. *Id.* 392 F.3d at 892; *Kaplan v. Shure Bros., Inc.,* 266 F.3d 598, 604 (7th Cir.2001); *Air Safety, Inc. v. Teachers Realty Corp.,* 185 Ill.2d 457, 236 Ill.Dec. 8, 706 N.E.2d 882, 884 (1999).

Plaintiff relies on *Berkey v. Kosciusko Cnty. Bd. of Zoning Appeals*, 607 N.E.2d 730, 731 (Ind. Ct. App. 1993) and *Taylor v. Reid*, 103 Il., 349, 356-57 (1882) for the proposition that the plain meaning of the words "shall give sixty (60) days" requires that notice be given at least sixty days in

advance, not exactly sixty days in advance. Underlying these decisions were the courts' rationale that a longer notice period than is required, "by a few days, could work no injury, but is calculated to work to the debtor's benefit." *Tooke et al. v. Newman et al.* 75 Ill. 219. While the court in *Taylor v. Reid* followed this reasoning, it conceded that "the publication of a notice a great length of time before the day of sale, although strictly within the letter would not be within the spirit of the power, and would be no notice in fact." 103 Ill. 349, 355 (1882). Defendants highlight this exact concern that an unlimited notice period will lead to absurd or commercially illogical results, such that a shareholder would be able to provide notice of his retirement ten years in advance. Such an allowance would, indeed, eviscerate notice; this, however, is not at issue here. Plaintiff's notice, while at six months' prior to resignation—well over the required sixty days—was still within a reasonable period such that Defendants had actual and additional notice which could only benefit the Corporation. The plain language and purpose of the notice provision supports as reasonable an interpretation that the Agreement requires a minimum number of days (though within a reasonable period) of advanced notice.

      Defendants offer a second interpretation of the notice required under 4.01 of the Agreement: that a retiring shareholder must provide exactly sixty days' notice of retirement to trigger a repurchase obligation by the Corporation. The Defendant claims that 4.01 requires that a retiring shareholder provides notice exactly sixty days before the day he retires. After retirement, the other shareholders have one hundred twenty days (one hundred eighty days after initial notice) to exercise an option to purchase the retiring shareholder's shares; if they decline, the Corporation must repurchase the retiring shareholder's shares. Defendants' interpretation suggests that a shareholder providing even sixty one days' notice would have given defective notice, absolving the Corporation of any obligation to purchase a retiring shareholder's shares. Upon examining 4.01 independently, and the Agreement as a whole, I do not find that the language of the Agreement supports this interpretation. There is no language prohibiting a shareholder from retiring after the Corporation

5

purchases his shares, either because the Corporation purchased shares within the first sixty days, after notice but before retirement, or because the notice was provided more than sixty days before retirement. Once a shareholder provides sufficient notice, the time for the shareholders to exercise their option and the Corporation's obligation to repurchase shares begin. Moreover, other provisions of the Agreement do contain more precise language to clarify rights and obligations, including what must be stated in a written notice (2.01), when purchase obligations commence in the case of disability (1.02), and when an option is forfeited (2.04). Interpreting the notice required under 4.01 to be exactly sixty days, especially in light of the Agreement as a whole, is speculative and unreasonable.

The "sixty (60) days" language is clear and unambiguous. It is the clear intent of the parties at the time the contract was made to require a minimum of sixty days' notice prior to retirement. Plaintiff provided notice on or around March 1, 2013 of his resignation, which would be effective on August 30, 2013. As discussed, while Plaintiff's notice exceeds the required amount of days required under 4.01, it does not so far precede his date of resignation that Defendants failed to have actual notice of Plaintiff's intent to resign or were prejudiced by the additional notice. Plaintiff tendered valid written notice to Defendants of his intention to resign, upon which the Corporations' obligation to purchase Plaintiff's shares was triggered. As Corporation failed to purchase Plaintiff's shares pursuant to the Agreement, Defendants are in breach of the Agreement. Plaintiff's motion for partial summary judgment is granted in part.

## IV. CONCLUSION

For the foregoing reasons, I grant entry of judgment on Count II and in favor of Plaintiff's motion for partial summary judgment, in part, as to Count III. Defendants' motion for summary judgment is denied. Parties are directed to determine the purchase price pursuant to the Agreement.[1]

ENTER:

*James B. Zagel*

James B. Zagel
United States District Judge

DATE: June 18, 2015

---

[1] Plaintiff asserts that Defendants are obligated to purchase Kirk's shares, valued in excess of $463,000.00. Defendants dispute Plaintiff's valuation and offer that Plaintiff's shares are worth approximately $195,000.00. Paragraph 4.03 provides that "[t]he purchase price of the shares transferred because of retirement or involuntary termination of employment shall be determined in accordance with Paragraph 6 of this Shareholder Agreement," which in turn refers to Exhibit B. Exhibit B indicates that if the shareholders fail to meet and set the fair market value of the shares of the Corporation within sixty (60) days after the end of the fiscal year, then it will be determined by an arbitrator.